F I L E D

**United States District court**

**Northern District of Illinois**

**Eastern division**

JAN 2 7 2021

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| Jonas M. Edmonds, | ) | Case No: |
| Petitioner, | ) | 15-CR-149-2 |
| | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| | ) | |
| United States of America | ) | |
| Respondent, | ) | |
| | ) | |

### Motion for Compassionate Release

Petitioner, Jonas Edmonds, Pro Se, is requesting for the court to grant him compassion release. This request is made pursuant to Title 18 U.S.C. 420 (g); Title 18 U.S.C. 3582 (c)(1)(a)(i), as amended pursuant to 603 (b) of the First Step Act, within the meaning of U.S.S.G §181.13 CMT Application Note 1(A)(ii)(I), For reduction in his sentence an immediate release under the "Compassionate Release Provision", due to the extraordinary and compelling circumstances in light of his medical condition, along with the risk posed by COVID-19 that is circulating throughout the prison system. He argues that "extraordinary and compelling reasons warrant a such reduction" 18 U.S.C. 3582 (c)(1)(A)(i), presented by his medical condition and continued imprisonment putting him at contracting and dying from COVID-19.

On March 11 2020, the World Health Organization declared a global pandemic due to severe acute respiratory syndrome coronavirus too SARS-CoV-2, which causes the highly contagious infectious disease COVID-19, which spreads primarily through person to person contact. (CDC,

How COVID-19 spreads https:www.cdc.gov/ccoronavirus/2019/NCOV/faq.html#how- COVID-19-spreads.)

## Argument

**Mr. Edmonds' Medical Conditions Makes Him High Risk When it Comes to COVID 19 and Vulnerability Posed from Continue. Imprisonment Presents "Extraordinary and Compelling Reasons" for Compassionate Release.**

*Mr. Edmonds' Medical Condition*

Mr. Edmonds was diagnosis with Surcoidosis in 2009, and he has a moderate to severe impairment in lung function (Bronchitis) (See Attached Medical Records). Doctors and experts across the country have put great effort into studying the effects that COVID-19 has had on people with sarcoidosis. Doctors from Mount Sinai Health System in New York collected data from 7,337 people who tested positive for COVID-19. Marissa Wexler MS, presented the findings of the data in her article "Patients with Impaired Lung Function May Have Higher Risk of Severe COVID-19". Miss Wexler said: "of the 7,337 people 37 has Surcoidosis, of those 37 people 14 of them were determined to have moderate to severe impairment in lung function. Of these, nine people developed severe COVID-19 disease. 'Severe disease' being defined as disease that resulted in the need of mechanical ventilation and death". Miss Wexler continued saying, "those with Surcoidosis that had impaired lung function were nearly eight times more likely to develop severe disease. She concluded by saying, "overall the data indicated that Surcoidosis patients with COVID-19 are more likely to require medical ventilation and die if they have pre-existing moderate and/or severe impairment in pulmonary function."

As well, along with Surcoidosis Mr. Edmonds also has Bronchitis (see attached medical records). It is not known if it was caused by Surcoidosis. But what is known is that aliments such as Bronchitis and Asthma are classified as moderate to severe impairment and pulmonary function. As well, there is no cure for Bronchitis just as with Surcoidosis. Mr. Edmonds' medical history has shown that the treatments that are prescribed for Bronchitis do not help him (see medical records). Thus, when Mr. Edmonds has an episode - which can be caused by Mr. Edmonds catching a cold, flu, or simply being in a smoke filled room – his Surcoidosis flares and that triggers his Bronchitis, and there is no remedy for Mr. Edmonds except to self care and rest. According to the CDC, the mortality rate for patients with chronic conditions like bronchitis also ranges between 6 to 10.5% which put Mr. Edmonds in an even higher risk category.

*COVID 19 In Prisons*

"While the COVID-19 pandemic has devastating in every region it invades, prison populations are subject to heightened vulnerability" (Samy v. United States, No. CR 16-20610-1, 2020 WL 188884, at *4 (E. D. Mich. Apr. 16, 2020). "The COVID-19 pandemic presents an extraordinary and unprecedented threat to incarcerated individuals," (United States v. Separata, No. 18-CR-578 (AJN), 2020 WL 1910481, *9 ( S.D.N.Y. Apr. 20, 2020). "In light of this reality courts around the country have recognized that the risk of COVID-19 to people held in jails and prisons is significantly higher than in the community, both for in terms of transmission , exposure, and harm to individuals who become infected." (United States v. Williams, No. 3:0cr95/MCR, 2020 WL 1751545, at *2 (N.D. Fla. APR. 1, 2020)(collecting cases); see also (Banks v. Booth, No. CV 20-849(CKK), 2020 WL 1914896 at *4 (D.D.C. Apr. 19, 2020).

## As A Chronic Care Patient Suffering From Surcoidosis And Bronchitis Being In Prison, Mr. Edmonds Is At Grave Risk Of Contracting and Dying From COVID-19.

 Mr. Edmonds current incarceration makes him extremely vulnerable to COVID-19. Joseph J Amin, Director of Global Health, who study infectious diseases in detention setting stated: "Detention facilities have an even greater risk of infection is diseases spreading because of conditions of crowding, the proportion of vulnerable people detained, and often scant medical care. People live in close quarters and are also subject to security measures which prohibits successful "social distancing" that is needed to effectively prevent the spread of COVID-19. (See Amon's Declaration at Para. 20, Def. reply Br. Ex. A, ECF No. 134-1 United States v. Jeremy Rodrigues No. 2:03-cr-0027). "Once a case of COVID-19 is identified in a facility, it will likely be too late to prevent a widespread outbreak," (Gilemo, 2020 WL 1916773, at *4 (brackets and quotation marks omitted). "The horizon of risk for COVID-19 in these facilities is a matter of days, not weeks, id., and "each day perhaps each hour, that elapses 'threatens incarcerated defendants with greater peril,'" (United States v. Atkinson, No. 2:19-cr-55 JMC (CWH), 2020 WL 1904585, at *2 (D. Nev. Apr. 17, 2020)(quoting United States v. Gross, No. 15-cr-769 (AJN), 2020 WA 1673244, at *3 ( S.D.N.Y. Apr. 6, 2020)). For Mr. Edmonds,  "nothing could be more extraordinary and compelling than this pandemic," as his chances of contracting and dying from COVID-19 while in prison are frighteningly high. Rodrigues, 2020 WF 1627331, at *1. Mr. Edmonds is incarcerated at Atlanta USP, which has reported 89 confirmed cases of COVID-19 as of November 16th 2020, (BOP, COVID-19 cases, https://www.bop.gov/coronavirus/index.jsp) Not to mention the death of a staff member that Atlanta USP did not report. (https://www.cbsnews.com/news/coronavirus-robin-grubbs-atlanta-federal-penitentiary-workers-criticize-COVID-19-response/)

As it stands today, it is nearly impossible for the FBOP to protect inmates - especially inmates like Mr. Edmonds – from contracting COVID-19. Director Carvajal even stated in an April 2020

memo that the staff and inmate population are only being "screened in temperature checked". This is clearly ineffective when the CDC has stated that the virus can lay dormant for days before affecting it's host.

Black's Law Dictionary (11 Ed. 2019) defines "extraordinary" as "beyond what is usual, customary, regular, or common." And "compelling need" as "a need so great that irreparable harm or injustice would result if it is not met." Director of the Bureau of president has declared in previously where release or transfer to a RRM office has occurred, that for inmate with underlying medical conditions or are of a certain age group, COVID-19 present extraordinary and compelling circumstances for purposes of compassion release. (See memo of Attorney General dated March 26, 2020 - Prioritization of Home Confinement As Appropriate In Response to COVID-19 Pandemic) Also (see the case of P. Manafort #35207-016 and M. Cohen #86067-054. Mr. Edmonds has filed for compassionate release with the prison twice, once in August and again on 11/13/2020. And on both occasions they not only did not grant him compassionate release, they failed to even respond to his request. Mr. Edmonds is unable to practice proper social distancing, nor can he self care properly in prison. And with the chances of him contracting COVID-19 disease, for the prison not to even respond to his request it seems as if he has been left for dead. Mr. Edmonds was not sentenced to death, nor was he sentenced to be punished by continued imprisonment that greatly increases chances of contracting COVID-19, which would most likely lead to hospitalization and or death.

Furthermore, the courts have found that to hold inmates that underlining help issues until they contract COVID-19 would be cruel and unusual punishment in violation of 8th Amendment of the United States Constitution. (https://reason.com/2020/05/12/judge-rules-in-favor-of-federal-inmates-in-coronavirus-suit-orders-speedier-releases/)

In light of the formations, Mr. Edmonds is extremely vulnerable to COVID-19. His continued stay in prison is life threatening and presents an extraordinary circumstances and compelling need warranting his release.

## Proposed Release Plan

Mr. Edmonds has very strong family ties. Therefore, upon release he will reside with his sister Remy Edmonds at 9:06 Kimberly Dr. DeKalb, Illinois 60115. She has 2 bedrooms and lives alone and has agreed to allow Mr. Edmonds to live with her rent free until Mr. Edmonds finds employment. As well, Upon his release Mr. Edmonds' family has agreed to open a bank account and pledged to deposit a minimum of $1000 into it weekly, until Mr. Edmonds find employment. This "allowance" will be to cover all of Mr. Edmonds living expenses as well as cover any co-pay and medical expenses. Mr. Edmonds has attached a list of family members who have pledged to give a portion of their weekly/biweekly income to ensure that each week there is at least a minimal of $1000 deposited into his account. Mr. Edmonds qualifies both for TANF and Medicare in the state of Illinois and if he is granted compassionate release he will be eligible for emergency assistance in both. Therefore he will have adequate medical insurance to

cover majority of his medical expenses. Mr. Edmonds sister (Remy Edmonds) and cousin (Manchinque Bates) both have agreed to be his means of transportation to get back and forth to doctors appointments as well as to any other destination. Mr. Edmonds has had the same primary care physician for 10 years, doctor Ashwin Kumar (630-859-6859) and has already scheduled an appointment - anticipating his release - set for January 8th 2021 at 2:00 PM. This appointment will be for an up-to-date physical and lung X-rays.

For the past 17 months Mr. Edmonds has been a student at the Emergency Management Institute (EMI) established by FEMA Independent Study Program (SID #0005115139). The Emergency Management Institute (EMI) offers self-paced courses designed for people who have emergency management responsibilities and the general public

He has completed majority of the student courses and after completion of the student course work he intends to continue on with the instructors courses. At the end of the instructors courses he will be certified and able to hold classes and issue certifications. Upon his release he intends to start a non-profit organization geared towards providing urban communities with this much needed knowledge and the resources that cone along with it.

List of Support Group

1. Riva Edmonds (Mother) - 630-618-9387
2. Remy Edmonds (Sister) - 815-593-0764
3. Manchinque Bates (Cousin) - 815-388-2955
4. Shanea Cook (Wife) – 206-476-0726
5. Jasmine cook (step-daughter) – 215-828-6170
6. Shaina Cook (Step-daughter) – 267-584-6336
7. Travis Edmonds (Cousin)- 219-805-4257
8. Dyvisha Edmonds (Cousin)- 630-777-9311
9. Jackie Williams (Cousin)- 470-464-9561

**Conclusion**

Due to the unforeseen extraordinary and compelling circumstances presented by Mr. Edmonds underlying medical condition and the high risk posed by his continued incarceration doing this unprecedented COVID-19 pandemic, and the reason stated above. Mr. Edmonds request that he be granted compassionate release.

Respectfully Submitted,

*Jonas M. Edmonds*

Jonas Edmonds #47846-424

Atlanta USP

P.O. BOX 150160

Atlanta, GA 30315

01/27/2021-20

60604-189423

Mar. M. Edmonds #47846-424
Fed. Atlanta 150160
P.O. Box 150160
Atlanta, GA
30315

ATL JAN 26 PM 4:15

United State District Court
Northern District of Illinois
219 S Dearborn St.
Chicago, Illinois 60604

U.S. POSTAGE PAID
FCM LETTER
ATLANTA, GA
30310
JAN 20, 21
AMOUNT
$3.70
R2305K138906-21

FOREVER

© USPS 2019

CERTIFIED MAIL®

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

THIS ENVELOPE IS RECYCLABLE AND MADE WITH 30% POST CONSUMER CONTENT

60604

1026

UNITED STATES
POSTAL SERVICE

FSC
MIX
Envelope
FSC® C137131